# Exhibit 1

Jay Edelson
*jedelson@edelson.com*
Steven L. Woodrow (*pro hac vice*)
*swoodrow@edelson.com*
Rafey S. Balabanian
*rbalabanian@edelson.com*
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378

*Attorneys for Plaintiff*

LINDAHL BECK LLP
George M. Lindahl (SBN 061905)
David C. Moore (SBN 156114)
Alan D. Mehaffey (SBN 247332)
660 S. Figueroa Street
Suite 1500
Los Angeles, California 90017-3457
(213) 488-3900
(213) 486-9883 Facsimile
glindahl@lindahlbeck.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY DUCHARME, individually and on behalf of Class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. HEATH ATTORNEY AT LAW, PLLC, a Utah professional limited liability company d/b/a LEXINGTON LAW FIRM; ADAM C. FULLMAN, an individual d/b/a LEXINGTON LAW FIRM CALIFORNIA, a registered California Credit Services Organization,<br><br>Defendants. | Case No. 10-cv-2763-CRB<br><br>**AMENDED CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Honorable Charles R. Breyer |

## AGREEMENT FOR SETTLEMENT OF DUCHARME LITIGATION

This Amended Class Action Settlement Agreement in the lawsuit entitled *Mary Ducharme v. John C. Heath Attorney At Law, PLLC, et al.*, pending in the United States District Court for the Northern District of California, Case No. CV-10-2763-CRB, is entered into as of February 22, 2011 between the Plaintiff Mary Ducharme ("Ducharme") on the one hand, and the Defendants, John C. Heath Attorney At Law, PLLC d/b/a Lexington Law Firm ("Heath PLLC") and Adam C. Fullman, an individual d/b/a Lexington Law Firm California ("Fullman") (collectively, the "Defendants"), on the other.  This Amended Class Action Settlement Agreement is intended by the parties to fully, finally and forever resolve, discharge and settle the Litigation upon and subject to the terms and conditions of this Amended Class Action Settlement Agreement, and subject to the final approval of the Court.

### I.  RECITALS

A.      On June 24, 2010, Ducharme commenced an action in the United States District Court for the Northern District of California against Defendants Heath PLLC and Fullman alleging claims for violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679, as well as state law claims for unfair competition under California Business & Professions Code §17200, *et seq.*, and unjust enrichment.  On September 24, 2010, Ducharme filed a First Amended Complaint alleging four claims for relief for violations of CROA, the California Business & Professions Code §17200*, et seq.*, and unjust enrichment.

B.      Defendants denied the allegations in the Litigation, denied wrongdoing of any kind, and further denied that this Litigation satisfies the requirements for adversarial class certification under Federal Rule of Civil Procedure 23.

C.      For approximately eight months, the parties in the Litigation engaged in vigorous litigation, including a fully briefed motion to dismiss (which was granted in part and denied in part), and extensive discovery, including responses to interrogatories, requests for admissions, and the production of voluminous documents.

1    D.  The negotiations leading up to the settlement began in September, 2010 and

2 culminated in a mediation on February 7, 2011 before Retired U.S. District Judge Gary Taylor.

3    E.  Following a full day of lengthy and intense arm's-length negotiations, the

4 mediation concluded without a settlement.  The Parties thereafter engaged in further settlement

5 negotiations, ultimately culminating in the initial Motion for Preliminary Approval of Class

6 Action Settlement (Dkt. 51) and Amended Settlement Agreement (Dkt. 51, Ex. 1).

7    F.  The Parties recognized that the outcome of the Litigation was uncertain, and that a

8 final result through the litigation process would require substantial risk and additional discovery,

9 time, and expense.  The Parties also took into consideration the limited financial condition and

10 limited professional liability insurance coverage of Heath PLLC and Fullman.  The Parties and

11 their counsel therefore agreed and desired to resolve this Litigation as a settlement class action

12 according to the terms of the initial Amended Class Action Settlement Agreement.

13    G.  On July 28, 2011 the Honorable Charles R. Breyer entered an order denying

14 Plaintiff's Motion for Preliminary Approval of the Class Action Settlement (Dkt. 61) and referred

15 the case to Magistrate Judge Jacqueline Scott Corley for further settlement discussions (Dkt. 62).

16    H.  Magistrate Judge Corley thereafter presided over several teleconferences between

17 counsel for the Parties.  During these teleconferences, the Parties discussed the District Court's

18 reasons for denying preliminary approval, including concerns expressed regarding the in-kind

19 relief contemplated by the agreement.  With Magistrate Judge Corley's substantial assistance, the

20 Parties were able to negotiate further relief for the Class, described further herein.

21    I.  The Parties believe that the Amended Class Action Settlement Agreement is a fair,

22 reasonable, and adequate resolution of the Litigation. The Parties further believe that the prompt

23 implementation of the Amended Class Action Settlement Agreement is preferable to further

24 prosecution of the Litigation.

25 //

26 //

27

28 Amended Class Action Settlement   3     Case No. 10-cv-2763-CRB
Agreement

## II. DEFINITIONS

For purposes of this Amended Class Action Settlement Agreement ("Agreement" or "Settlement Agreement" or "Amended Settlement Agreement") the accompanying Exhibits, and the implementation of the settlement outlined herein, the following terms shall have the following meanings:

A.     "Court" means the United States District Court for the Northern District of California, Judge Breyer presiding.

B.     "Ducharme" shall mean the plaintiff Mary Ducharme.

C.     "Defendants' Counsel" shall mean the following attorneys of record for Heath PLLC and Fullman in the Litigation:

> George M. Lindahl, Esq.
> Alan D. Mehaffey, Esq.
> Lindahl Beck LLP
> 660 South Figueroa Street
> Suite 1500
> Los Angeles, CA  90017

D.     "Defendants" shall mean John C. Heath Attorney At Law, PLLC, d/b/a Lexington Law Firm, and Adam C. Fullman, an individual d/b/a Lexington Law Firm California.

E.     "Effective Date" means the date, if any, on which the Judgment entered pursuant to this  Agreement becomes Final and not subject to appeal under the applicable law or, in the event of a timely, valid appeal from the entry of the Judgment, the date on which such valid appeal is resolved affirming the Judgment in all material respects and the Judgment is not subject to further judicial review.

F.     "Fee Award" means the amount of attorneys' fees and reimbursement of costs awarded by the Court to Plaintiff's Counsel as described in Section V below.

G.     "Final" means one business day following the later of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Judgment ordering the dismissal with prejudice of the Released Claims and approving the  Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to attorneys' fees

and reimbursement of expenses, the date of completion, in a manner that finally affirms and leaves in place the Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

H.    "Final Fairness Hearing" means the hearing before the Court where the Parties will request the Judgment be entered by the Court approving the Agreement as fair, reasonable and adequate, and ruling on the requests for Fee Award, and the incentive awards to the Named Plaintiff.

I.    "Final Order and Judgment" or "Judgment" means the Order of Final Judgment to be entered by the Court at the Final Fairness Hearing or such other time approving this Agreement, as fair, adequate and reasonable in accordance with applicable jurisprudence, without modifications that are unacceptable to the Plaintiff or Defendants, confirming the certification of the Settlement Class, and issuing such other findings and determinations as the Court or the Parties deem necessary and appropriate to effectuate the terms of this Agreement.

J.    "Fullman" shall mean the defendant, Adam C. Fullman, an individual, d/b/a Lexington Law Firm California.

K.    "Heath PLLC" shall mean the defendant, John C. Heath Attorney At Law, PLLC d/b/a Lexington Law Firm.

L.    "Lexington Law Services" shall mean the services Defendants have agreed to provide to the Settlement Class as set forth in Section IV.D below and Exhibit F, hereto.

M.    "Litigation" shall mean the lawsuit entitled *Mary Ducharme v. John C. Heath Attorney At Law, PLLC, et al.*, pending in the United States District Court for the Northern District of California, Case No. CV-10-2763-CRB.

N.    "Named Plaintiff" shall mean Mary Ducharme.

O. "Objection/Exclusion Deadline" shall mean the date to be set by the Court in this Litigation for a Settlement Class Member to file a request for exclusion or a notice of intention to appear and object as defined in Section III.C below.  The deadline for filing a request for exclusion or a notice of intention to appear and object will be clearly set forth in the Notice and shall be no later than twenty-one (21) days before the Final Fairness Hearing.

P. "Online Registration Form" shall be the registration form described in Section IV.D.3 below, substantially in the form attached hereto as Exhibit E.

Q. "Party" means any or each of Plaintiff or Defendants in the Litigation. "Parties" means collectively the Plaintiff and Defendants.

R. "Person" or "Persons" shall mean an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

S. "Plaintiff's Counsel" means the following attorneys:

> Jay Edelson
> Steven L. Woodrow
> Rafey Balabanian
> Edelson McGuire LLC
> 350 North LaSalle Street
> Suite 1300
> Chicago, IL 60654

T. "Registration by Mail Form" shall mean the mail registration form described in Section IV.D.3 below, and substantially in the form included with the Mail Notice, attached hereto as Exhibit D.

U. "Released Claims" shall have the meaning set forth in Section III.F. below.

V. "Released Defendants" or "Released Parties" shall mean Heath PLLC and Fullman, and their present or former shareholders, owners, insurers, officers, directors, employees, attorneys, agents, administrators, successors, assigns, and all past, present or future subsidiaries, partners, joint venturers, d/b/a's ("doing business as"), corporate affiliates, sister corporations,

1 parents, divisions, and predecessors, and any other related or affiliated entities or individuals,

2 including but not limited to Lexington Law Firm and Lexington Law California and any such

3 entities or individuals affiliated with Heath PLLC or Fullman when the court grants preliminary

4 approval of this Agreement.

5       W.     "Settlement Administrator" means Kurtzman Carson Consultants, LLC,

6 75 Rowland Way, Suite 250, Novato, CA 94945, or such other Person selected by the Parties and

7 approved by the Court, to oversee the processing of objections to and requests for exclusion from

8 the Agreement, including notices of intention to appear and object, requests for exclusion as set

9 forth in this Agreement.  The Settlement Administrator shall also oversee the payment of the Fee

10 Award as set forth in Section V below.  Defendants shall have the responsibility for paying the

11 Settlement Administrator for any work performed by the Settlement Administrator in carrying out

12 its duties to administer this Agreement.

13       X.     "Settlement" "Amended Class Action Settlement Agreement" or "Agreement" or

14 shall refer to this document and all incorporated exhibits.

15       Y.     "Settlement Class" shall mean and refer collectively to all Persons in the United

16 States who, between June 24, 2005 and the date on which the Court grants preliminary approval of

17 this proposed Agreement, entered into a credit repair contract with Heath PLLC or Fullman or any

18 related or affiliated entities or individuals, including but not limited to any entities or individuals

19 known as Lexington Law Firm or Lexington Law California.  Excluded from the Class are the

20 following:  the Defendants, the Settlement Administrator, and any respective parent, subsidiary,

21 affiliate or control person of the Defendants, as well as the officers, directors, agents, servants, or

22 employees of the Defendants, any judge presiding over this case or over any of the actions which

23 comprise the Litigation, and the immediate family members of any such Person(s)

24       Z.     "Settlement Class Member" shall mean and refer to Persons who fall within the

25 definition of the Settlement Class.

26

27

28

AA.     The "Settlement Website" shall mean the Internet site at www.croasettlement.com. Settlement Class Members will be able to visit the Settlement Website to find important dates affecting the Agreement and to access important settlement documents such as the Agreement and the Court's Order Granting Preliminary Approval, as well as copies of the Email Notice, the Long Form Notice, the Online Registration Form, and the Registration by Mail Form.

AB.     "Unknown Claims" means claims that could have been raised in this Litigation and that the Plaintiffs or any or all other Persons and entities whose claims are being released, or any of them, do not know or suspect to exist, which, if known by him, her or it, might have affected his, her or its decision to accept this agreement to release the Released Parties from the claims involved in the Litigation or might affect his, her or its decision to agree, object or not to object to the Agreement.  Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are being released shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, Plaintiffs, Settlement Class Members, and all other Persons whose claims are being released, also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of the United States, any state or territory of the United States, or principle of state or federal common law or statutory law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release or the law applicable to such claims, and they acknowledge that such law may change,

1  but that it is their intention to finally and forever settle and release the Released Parties,

2  notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

3  ### III. DISMISSAL OF THE LITIGATION

4      A.    As soon as is reasonably practicable after the execution of this Agreement,

5  Ducharme, through Plaintiff's Counsel, shall present this Agreement to the Court for its

6  preliminary approval and the Parties shall jointly take all appropriate steps to obtain entry of an

7  order substantially similar to the proposed order attached hereto as Exhibit A, which would:  (1)

8  certify a class solely for settlement purposes under Federal Rule of Civil Procedure 23 composed

9  of the Settlement Class Members, (2) preliminarily approve the proposed Agreement, (3) approve

10  the proposed notices in a form substantially similar to those attached hereto as Exhibits B, C, and

11  D, (4) appoint Plaintiff's Counsel as class counsel and the Named Plaintiff as the settlement class

12  representative under Federal Rule of Civil Procedure 23, and (5) appoint a Settlement

13  Administrator.

14      B.    Notice

15          1.    No later than seven (7) days after the Court certifies the Settlement Class,

16  preliminarily approves the proposed Agreement, approves the forms of notice, appoints class

17  counsel, and appoints a Settlement Administrator, Defendants shall cause the approved form of the

18  Long-Form Notice (in a form substantially similar to that attached hereto as Exhibit B) to be

19  posted on the Settlement Website together with links to the other documents to be made available

20  via the Settlement Website.

21          2.    No later than thirty (30) days after the Court certifies the Settlement Class,

22  preliminarily approves the proposed Agreement, approves the forms of notice, appoints class

23  counsel, and appoints a Settlement Administrator, Defendants shall cause the approved Email

24  Notice, in a form substantially similar to that attached hereto as Exhibit C (the "Email Notice"), to

25  be sent by email to each Settlement Class Member at each member's last known email address in

26  the customer databases of Heath PLLC and Fullman to the extent such address is available.  The

27
28

1  Email Notice shall include a hyperlink to the Settlement Website and a downloadable copy of the

2  Registration by Mail Form.  Defendants represent that such customer databases reflect the most

3  accurate current email addresses reasonably available for the Settlement Class Members.

4          3.       In the event an Email Notice sent pursuant to subsection III (B)(2) is

5  returned to the sender because it could not be delivered ("bounced back"), the Defendants may,

6  after conferring with Plaintiff's Counsel, cause the Email Notice to be re-sent.

7          4.       In the event that each Email Notice sent to a particular Settlement Class

8  Member is "bounced back," or no email address is located, or a subsequent attempt at emailing

9  yields a further bounce back or bounce backs, Defendants shall cause the approved Mail Notice, in

10  a form substantially similar to that attached hereto as Exhibit D (the "Mail Notice"), to be sent via

11  standard U.S. mail, postage prepaid, requesting (at Defendants' option) either forwarding service

12  or change service, to such Settlement Class Member's last known mailing address.  Defendants

13  shall cause the last known mailing addresses to be updated by first utilizing data from the internal

14  files of Heath PLLC and Fullman, if an additional address is available within such files, and

15  thereafter by utilizing the National Change of Address ("NCOA") process as licensed by the U.S.

16  Postal Service.  Defendants represent that the foregoing databases reflect the most accurate,

17  current mailing addresses reasonably available for the Settlement Class Members.  The Mail

18  Notice shall include a copy of the Registration by Mail Form.  Defendants shall mail the Mail

19  Notices no later than thirty (30) days following the receipt of any bounce backs from the

20  attempted delivery of the Email Notice.

21          5.       The Email Notice and Mail Notice and Registration by Mail Form will

22  state that the proposed Settlement Class Members may opt out of the class or object to the

23  settlement as specified below in Section III.C.

24          6.       The deadlines for completing each of the foregoing actions with respect to

25  Notice will be established by the Court's Order that preliminarily approves this Agreement.

26

27

28  Amended Class Action Settlement                  10                    Case No. 10-cv-2763-CRB
    Agreement

7.      Defendants shall pay the costs of preparing, printing, emailing, posting, mailing, and publishing the approved notice, as described above, but Defendants shall have no further obligation to identify or locate Settlement Class Members, or to mail or otherwise disseminate the approved notice.

8.      Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § I715(b), the Defendants will send notice to the appropriate federal and state officials identified in § 1715(a) of CAFA, not later than ten (10) days after this Agreement is filed with the Court, and Defendants shall bear the costs of this notice under CAFA.

9.      No later than fourteen (14) days prior to the Final Fairness Hearing, Defendants shall provide a sworn declaration to Plaintiff's Counsel, to be made available to the Court at the Final Fairness Hearing, that the Defendants effectuated the plan for notice in accordance with this paragraph III.B.

C.      Exclusions and Objections

1.      To be excluded from the class, a proposed Settlement Class Member shall send a written request for exclusion as defined herein to "Exclusion Requests – Ducharme Settlement Administrator, Kurtzman Carson Consultants, LLC, 75 Rowland Way, Suite 250, Novato, CA 94945." The written request must contain the original signature of the class member; the class member's name, current postal address, and current telephone number; and a specific statement that the Settlement Class Member wants to be excluded from the Settlement Class. It must be postmarked no later than the Objection/Exclusion Deadline established by the Court. In no event shall Persons who purport to opt out of the Settlement Class as a group, aggregate, or class involving more than one claimant be considered valid opt outs. Requests for exclusion that do not comply with any of the foregoing requirements will not be accepted.

2.      Any Settlement Class Member who does not opt out, but who instead wishes to object to the Settlement, may do so either *pro se* or through counsel at his or her own expense, by filing a notice of intention to appear and object as defined herein with the Court, and

Amended Class Action Settlement                    11                    Case No. 10-cv-2763-CRB
Agreement

mailing a copy of the notice of intention to appear and object to "Objections – Ducharme Settlement Administrator, Kurtzman Carson Consultants, LLC, 75 Rowland Way, Suite 250, Novato, CA 94945." The notice of intention to appear and object must be mailed and postmarked by the Objection/Exclusion Deadline established by the Court. The notice of intention to appear and object must include the class member's name, current postal address, and current telephone number, and state that he or she is a Settlement Class Member; and it must state the reasons for objecting to the Agreement. The Settlement Class Member must also identify any written material on which his or her objection is based or on which the member intends to rely, including all arguments, citations, and evidence supporting the objection. Finally, the written objection must contain the original signature of the Settlement Class Member and indicate whether the class member or his lawyer intends to appear at the Final Fairness Hearing. Any lawyer who intends to appear at the Final Fairness Hearing must enter a written appearance with the Clerk of the Court no later than the date set by the Court in its order preliminarily approving this Agreement. Any Settlement Class Member who fails to timely file a written objection with the Court and notice of intention to appear and object at the Final Fairness Hearing in accordance with the terms of this paragraph and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Agreement at the Final Fairness Hearing and shall be deemed to have waived his, her or its objection to this Agreement. To be valid, the notice of intention to appear and object must be mailed to the Settlement Administrator and filed and sent to Plaintiff's Counsel and Defendants' Counsel on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.

D.     The Defendants reserve the right to continue communicating with their customers in the ordinary course of business. To the extent customers initiate communications regarding this settlement, Defendants may confirm the fact of a settlement and refer inquiries to the Settlement Administrator at www.croasettlement.com and 1-800 [telephone number to be inserted] or to Plaintiff's Counsel. This section is not intended to prohibit Defendants from explaining to a

1   current customer his or her present obligations for the credit-repair program in which he or she is

2   enrolled.

3        E.      Following the Court's final approval of this Agreement, the Parties shall take all

4   appropriate steps to obtain entry of the Final Order and Judgment, which will dismiss the

5   Litigation with prejudice and without further costs and will incorporate the releases set forth in

6   Section III.F.

7        F.      Upon the Effective Date,

8             1.      the Released Defendants shall forever be released and discharged from any

9   and all legal or equitable claims (arising on or before the date the Court grants Preliminary

10  Approval to this Agreement) including Unknown Claims that the Named Plaintiff and Settlement

11  Class Members had or may have had based on any Released Party's violation of the federal Credit

12  Repair Organizations Act; and

13            2.      the Released Defendants shall forever be released and discharged from any

14  and all legal or equitable claims (arising on or before the date the Court grants Preliminary

15  Approval to this Agreement) that the Named Plaintiff and Settlement Class Members had or may

16  have had based on any Released Party's selling, providing or performing (or representing that such

17  person can or will sell, provide, or perform) the service of improving a consumer's credit record,

18  history, or rating (including providing advice or assistance to the consumer with regard to

19  improving the consumer's credit record, history, or rating or providing disclosures as a result of

20  providing credit repair services); and

21       G.      Upon the Effective Date, no default by any person in the performance of any

22  covenant or obligation under this Agreement or any order entered in connection therewith shall

23  affect the dismissal of the Litigation, the *res judicata* effect of the Final Order and Judgment, the

24  foregoing releases, or any other provision of the Final Order and Judgment; provided, however,

25  that all other legal and equitable remedies for violation of a court order or breach of this

26  Agreement shall remain available to all parties.

27

28

H.     The Release shall not be interpreted as impairing any settling class member from assisting in, being a witness in, or providing evidence in any action or investigation brought by either an Attorney General or Regulatory Agency and which arises out of or is related to the facts and subject matter of the Litigation.

## IV. SETTLEMENT PROGRAM

A.     All of the affirmative relief contemplated by this Agreement is expressly contingent upon the proposed class-action settlement's receiving the Court's final approval.  Following the Court's final approval of the Agreement, the entry of the Final Order and Judgment, and the completion of all appeals, Defendants shall implement the Agreement in accordance with the terms and conditions set forth herein.

B.     Defendants have agreed to provide Settlement Class Members two principal forms of relief:  remedial and in-kind.  For remedial relief, Defendants have removed from their contracts with clients particular language that Plaintiff alleged violated the requirements of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679, as specifically described in subsection IV.C below and have agreed to refrain from prohibiting any client from having direct contact with the credit bureaus.  For in-kind relief, Defendant Heath PLLC has agreed to offer Settlement Class Members a choice of either Identity Protect[sm] or Credit Repair Maintenance[sm] services specifically described in Section IV.D below.

C.     <u>Remedial Relief</u>.

1.     Change in Contract Language.  Defendants have deleted the following language from their contracts with clients:  "In consideration of the Firm's legal services and low monthly fee, you agree . . . to only communicate with the credit bureaus through the Firm's written correspondence."

2.     Defendants further agree to refrain from taking any other action that prohibits their customers from having direct contact with the credit bureaus.

3. Nothing in this Section IV.C or any other provision of this Agreement shall prevent Defendants from complying with their obligations under the Fair Credit Reporting Act, the Fair and Accurate Credit Transactions Act, or any similar federal or state statute, and the accompanying regulations.

D. <u>In-kind Relief</u>.

1. Heath PLLC agrees to pay to Settlement Class Members between six million two hundred fifty-thousand dollars ($6,250,000 USD) and not more than twelve million five-hundred thousand ($12,500,000 USD) worth of Identity Protect$^{sm}$ and Credit Repair Maintenance$^{sm}$ services, to be distributed through certificates (the "Certificates") to the Settlement Class Members in accordance with the terms of this Paragraph D.

 a. The first $6,250,000 must be paid out entirely on a *pro rata* basis to the Settlement Class Members ("claimants") who submit valid Registration by Mail Forms and Online Registration Forms ("claims").  The total amount paid may not drop below $6,250,000, but will adjust upward, depending on the amount of valid claims filed.  Thus, and by way of illustration only, if there are 50,000 valid claims, each claimant will receive a $125.00 Certificate for either the Identity Protect$^{sm}$ or Credit Repair Maintenance$^{sm}$ services described in Exhibit F (base payout of $6,250,000 / 50,000 valid claimants = a Certificate worth $125 for each approved claimant).

 b. In the event the number of valid claims equal or exceed 313,284, each claimant shall receive a Certificate for not less than $19.95 (the "Minimum Certificate Value").  By way of illustration only, if there are 500,000 valid claims filed, each claimant will receive a $19.95 Certificate, and a total of $9,975,000 in Certificates will be paid out to the Settlement Class in Certificates to be used for the services described in Paragraphs 2a and 2b below.

 c. In no event shall Defendants be required to honor more than $12,500,000 worth of Certificates.  In the event that the number of valid claimants is such that

Amended Class Action Settlement Agreement  15  Case No. 10-cv-2763-CRB

paying out the Minimum Certificate Value would result in Defendants being required to honor more than $12,500,000, each certificate shall be reduced *pro rata* such that each Certificate is worth the same amount.

2.   Class Members will be presented with a choice between either Identity Protect[sm] or Credit Repair Maintenance[sm] services.  Each Class Member, current and former customers alike, shall be able to elect which type of service he or she wishes to receive by checking the applicable box on the Online Registration Form or the Registration by Mail Form.  The value of the Certificate shall not vary or be impacted by which service type the Class Member elects.

a.   Identity Protect[sm] services.  Identify Protect will be available to current and former Lexington Law clients.  These services are valued at $19.95 per month. IdentityProtect[sm] combines traditional identity theft services with limited credit monitoring and spyware protection, along with the following service components:

i.   Identity Protect and Fraud Alerts:  Lexington Law will provide alerts via telephone, email, and SMS text message when a client's credit has been accessed (potentially without the client's permission) to help prevent persons from using the client's credit to apply for trade lines and new credit accounts without the client's express permission.

ii.   $25,000 Identity Theft Insurance Policy (excluding N.Y. claimants):  A $25,000 Identity Theft Insurance policy is included in IdentityProtect[sm] at no additional cost to the client.  This insurance reimburses clients for covered expenses incurred when recovering from one or more identity theft incidents.  It also provides access to on-call specialists who assist clients in developing effective strategies to resolve the client's fraud-related issues.  The Long Form Notice shall inform Class Members that the Identity Theft Insurance does not include payment for items purchased by identity thieves.

iii.     BillSentry<sup>sm</sup>:  The identity protection program provides clients with sophisticated software tools to calendar the due date of bills and schedule creditor payments.

iv.     JunkReducer<sup>sm</sup>:  As part of the program, Lexington Law contacts consumer directories to help prevent the client's receipt of unsolicited calls and junk mail.

v.     PasswordProtect<sup>sm</sup>:  Clients have access to password protection software resident within Lexington Law's secure network, but the code for which runs entirely within the client's own computer system.  This allows clients to generate complex passwords that are unique to individual web sites without transmitting back to or storing them within Lexington Law's or other external networks.

vi.     WalletShield<sup>sm</sup>:  As part of the program, Lexington Law contacts creditors to cancel the client's credit cards and order new cards in the event of fraud or potential fraud.

b.     Credit Repair Maintenance<sup>sm</sup> service.  In the alternative to Identity Protect<sup>sm</sup> service, claimants will have the option of choosing the Credit Repair Maintenance<sup>sm</sup> service.  The Credit Repair Maintenance<sup>sm</sup> service includes seven (7) service components designed to provide ongoing maintenance of a client's credit information, following the client's voluntary termination of Lexington Law's comprehensive standard credit repair program(s):

i.     Credit Report Reviews:  Lexington Law will review a credit report with the client as the basis for determining whether new problem items have appeared on the client's credit report.  Lexington Law will then alert the client regarding any issues, including the possibility of identity theft and inaccurate or inappropriate collections activity.

ii.     Line-item Challenges:  At the client's direction, Lexington Law will challenge and/or verify unfair or inaccurate items that appear on the client's credit report.

iii.    Monthly Credit Score Improvement Analysis:  Lexington Law will provide a monthly credit score improvement analysis that analyzes the client's credit report based on relevant scoring factors.

iv.    Client Site Access and Ongoing Education:  Clients will have access to the Lexington Law client site, which contains consumer credit information, additional credit analysis, and client case notes, all of which are directly relevant to the client's case.

v.    Personal Score Coaching:  Clients will have immediate and continuing access to an experienced attorney or paralegal for personalized score coaching free of charge via a toll-free telephone number upon request.

vi.    $25,000 Identity Theft Insurance Policy (excluding N.Y. claimants):  A $25,000 Identity Theft Insurance policy is included in IdentityProtect$^{sm}$ at no additional cost to the client.  This insurance reimburses clients for covered expenses incurred when recovering from one or more identity theft incidents.  It also provides access to on-call specialists who assist clients in developing effective strategies to resolve the client's fraud-related issues.  The Long Form Notice shall inform Class Members that the Identity Theft Insurance does not include payment for items purchased by identity thieves.

vii.    ReportWatch Alerts:  Clients will receive email alerts whenever Lexington Law detects new or revised credit report items that may impact their credit scores.

3.    The Certificates will be fully transferable prior to activation, may be used in conjunction with any other offer, and may be combined with other certificates.  Lexington Law is permitted to approve of any transfers of the Certificates to ensure that there are no conflicts or other barriers to representation.  Once a client has elected either IdentityProtect$^{sm}$ or Credit Repair Maintenance$^{sm}$ services, the Certificate can only be applied to that respective service type.

4.      If a current credit repair client chooses to receive a certificate for the Credit Repair Maintenance<sup>sm</sup> service, the service will not become available until the client terminates his or her current credit repair program.

5.      To obtain a settlement benefit the Settlement Class Member must complete the following registration and activation process:

a.      <u>Registration</u>.  First, the Settlement Class Member must fully complete the Online Registration Form (attached hereto as Exhibit E) or the Registration By Mail Form (*see* Exhibit D) both of which will be available online at the Settlement Website, www.croasettlement.com, or a similarly named and readily available website within seven (7) days following Preliminary Approval.  If the Settlement Website URL name or address is or becomes unavailable because it is owned by a third party or otherwise, Defendants will purchase a similar site.

b.      <u>Registration Forms</u>.  Both the Online Registration Form and the Registration By Mail Form will be available on the Settlement Website and will require that the Settlement Class Member:  (1) provide the Settlement Class Member's name, current postal address, current telephone number and current email address; (2) indicate their choice of either the Identity Protect<sup>sm</sup> or Credit Repair Maintenance<sup>sm</sup> services by checking the appropriate box on the claim form; (3) certify such Settlement Class Member's status as a current or former customer, as applicable, who falls within the Settlement Class definition; (4) and attest that the information provided by the Settlement Class Member is correct and that the Settlement Class Member has read and agrees to the terms of the Settlement, specifically including the release.

c.      Settlement Class Members will be required to use the Settlement Website to inform Defendants of any changes, corrections, or updates to their registration information, including their name, current postal address, current telephone number, current email address, date of birth, and/or social security number.

d.      Settlement Class Members shall have one hundred twenty (120) days ("Claim Form Deadline") following the date that the approved Long Form Notice is first published on the Settlement Website (the "Notice Date") to submit either the Online Registration Form or the Registration by Mail Form to the Defendants.

e.      Benefit Codes.  Defendants shall provide activated benefit codes to the approved claimants as follows:  No later than thirty (30) days following the Effective Date (the "Benefit Code Activation Date") Heath PLLC will provide each Settlement Class Member who submits a valid claim with a Certificate that contains the claimant's benefit code and the total dollar value of the services that may be obtained by using the benefit code, together with the website address where the benefit code may be registered and used and instructions for registering and using the benefit code. Heath PLLC shall send the Certificates and instructions via an email sent to the claimant's most current email address, as provided by that Settlement Class Member in the Online Registration Form or the Registration By Mail Form, or as updated by the Settlement Class Member on the Settlement Website.  Where no email address is provided, Heath PLLC shall send the benefit codes via U.S. Mail.

f.      The activated benefit codes may thereafter be used by claimants or other certificate holders to obtain settlement benefits set forth in Exhibit F.  Claimants or other certificate holders must register their Benefit Codes on the Lexington Law website no later than twelve (12) months following the Benefit Code Activation Date ("Benefit Code Redemption Deadline").  Benefit Codes that are timely registered may be used to obtain either Lexington Law's Identity Protect[sm] or Credit Repair Maintenance[sm] services for a period of thirty-six (36) months following their respective registration dates, at which time such benefit codes will expire, be deactivated, and may no longer be used in any way by claimants or other certificate holders to obtain Lexington Law's Identity Protect[sm] or Credit Repair Maintenance[sm] services, or any other services.  Defendants shall maintain records of the benefit codes and shall provide such codes upon the request of claimants or other certificate holders who verify in writing that they misplaced

or forgot their code.  After the benefit codes expire, claimants or other certificate holders who have not previously used their Benefit Codes will no longer be entitled to obtain a settlement benefit by using the Benefit Code.

g.      If the balance of money remaining on any Certificate is insufficient to pay for one full month worth of services ($19.95) but is $4.95 or greater, the claimant shall be entitled to one full month worth of the service previously provided to the Claimant via the Certificate.  If the balance remaining is less than $4.95, the claimant will not be entitled to an additional month of services.

h.      Should the value remaining on any claimant or certificate holder's Certificate be less than the amount required to obtain a month's worth of services ($4.95 minimum), the Settlement Administrator will send an electronic notice to the claimant or other certificate holder indicating that the Person's ability to receive any additional services shall, therefore, expire at the end of the then current month.  The electronic notice may notify such Persons that they may continue to receive such services if the Person so desires by remitting the difference between the balance remaining on the Certificate and the monthly price of the services. Defendants will not provide any negative opt-in or automatic renewal of the Identity Protect[sm] or Credit Repair Maintenance[sm] services after a customer's free services have been exhausted.  Any claimant or other certificate holder's express consent is required for services beyond those permitted by the Certificate balance.  The Released Parties will not use this settlement in any way to promote services to the class.

i.      Defendants shall provide declarations to Plaintiff's Counsel confirming under oath that the Defendants have processed claims, provided benefit codes, and provided the agreed-upon services consistent with this section.  The first such declaration shall be provided no later than thirty (30) days following the Benefit Code Activation Date.  The second such declaration shall be provided no later than eighteen (18) months following the Benefit Code

1  Activation date.  The third and final declaration shall be provided no later than thirty (30) days

2  following the date the Benefit Codes are set to expire.

3         6.    <u>Incentive Award to Named Plaintiff</u>.  Subject to the Court's granting of

4  Final Approval, Defendants have agreed to pay Ducharme the sum of ten thousand dollars

5  ($10,000) on account of her role and service as class representative no later than thirty (30) days

6  following the Effective Date.

7         7.    Defendants will confirm their financial condition by providing the 2008 and

8  2009 balance sheets of their respective law firms along with the Defendants' current personal

9  financial statements.  Such financial documents shall be provided in Compilation form by an

10  independent C.P.A., to Plaintiff's Counsel within ten (10) days after the execution of this

11  Agreement.  The Compilation form shall conform to the standards set forth for such documents as

12  established by the American Institute of Certified Public Accountants regarding Statements on

13  Standards for Accounting and Review Services.  These balance sheets and financial statements are

14  confidential and proprietary information ("Confidential Information").  Plaintiff's Counsel agrees

15  to hold all Confidential Information of Defendants in strict confidence and shall not use, offer, or

16  admit Confidential Information in any way or in any action or proceeding except (1) the hearings

17  necessary to obtain and implement Court approval of this proposed settlement or (2) as ordered by

18  the Court.

19                             **V. ATTORNEY'S FEES AND COSTS**

20      A.    Having agreed to settle this Litigation on a class-action basis, Heath PLLC has

21  agreed to pay Plaintiff's Counsel for its reasonable attorneys' fees, including its costs and

22  expenses, in prosecuting this Litigation, subject to Court approval and within the parameters

23  discussed below.  Plaintiff's Counsel has agreed to request no more than $965,000 in attorneys'

24  fees and costs for this Litigation.  That amount includes not only the payment of all attorneys'

25  fees, costs, and expenses to Plaintiff's Counsel, but also payment for all attorneys and other

26  persons working under the direction of Plaintiff's Counsel.  Defendants have agreed not to oppose

27
28  Amended Class Action Settlement      22      Case No. 10-cv-2763-CRB
Agreement

1  such a request.  Defendants will not pay any award of attorneys' fees, costs, or expenses in excess

2  of $965,000.  Heath PLLC shall pay these attorneys' fees to Plaintiff's Counsel over and above the

3  costs associated with providing the Settlement Program and notice to Settlement Class Members.

4  The foregoing payment of attorneys' fees to Plaintiff's Counsel is only applicable, however, if the

5  proposed class action settlement is finally approved, and that final approval is affirmed on appeal,

6  if any.

7       B.       If the above conditions are met, Heath PLLC will pay attorneys' fees, costs and

8  expenses in the following installments to Plaintiff's Counsel, subject to approval by the Court:

9  $475,000 will be paid into an interest-bearing escrow account controlled by the Settlement

10  Administrator, within five (5) days after the court grants preliminary approval of this proposed

11  Agreement, and will be released to Plaintiff's Counsel within ten (10) days of the Effective Date.

12  The interest accruing on the escrowed funds will be applied to the administrative costs incurred by

13  the Settlement Administrator.  Thereafter, the remaining $490,000 balance will be paid on the first

14  of each month in nine (9) $50,000 monthly installments and a final monthly installment of

15  $40,000.  These monthly payments will be paid without interest.  In no event will the first monthly

16  installment be due until June 1, 2011 or thirty (30) days following the Effective Date, whichever is

17  later.  No other agreement exists between the parties as to attorneys' fees, costs, or expenses.

18                          **VI. TERMINATION AND SUSPENSION**

19       A.       Defendants' willingness to settle this Litigation on a class action basis and to agree

20  to the accompanying certification of the Settlement Class is dependent upon achieving finality in

21  this Litigation and the desire to avoid the expense of this and other litigation.  Consequently,

22  Defendants shall have the unilateral and unfettered right to individually terminate this Agreement,

23  declare it null and void, and have no further obligations under this Agreement to the Named

24  Plaintiff or to Settlement Class Members, if any of the following conditions subsequently occur:

25            1.       Any court requires a notice program in addition to or in any form other than

26  as set forth in this Agreement and Exhibits B, C and D;

27

1    2.  The Parties fail to obtain preliminary approval of the proposed settlement

2 according to the terms set forth in this Agreement and its exhibits attached thereto;

3    3.  More than 2,500 Settlement Class Members elect to opt out of the tentative

4 Settlement Class in this Litigation;

5    4.  More than 250 Settlement Class Members file written objections to this

6 proposed settlement;

7    5.  An order is entered that would require either termination or substantial

8 modification of the settlement described herein;

9    6.  The Court fails to enter the Final Order and Judgment dismissing the

10 Litigation with prejudice and integrating the material terms of this Agreement, including but not

11 limited to the scope of the judgment and the release;

12    7.  Any court orders Defendants to pay attorneys' fees (including costs and

13 expenses) in connection with the Litigation in excess of $965,000 unless all of the counsel

14 awarded such attorneys' fees (including costs and expenses) disclaim in writing, within seven (7)

15 days of such order, their right to collect more than the amount of $965,000 agreed upon in this

16 Agreement; or

17    8.  The Final Order and Judgment in this Litigation is appealed and such Final

18 Order and Judgment is finally reversed or modified on appeal.

19   B.  If this Agreement is terminated and becomes null and void: (1) the class-

20 certification portions of the Agreement shall have no further force and effect with respect to any

21 party to the Litigation and shall not be offered in evidence or used in the Litigation or any other

22 proceeding; (2) counsel for the Defendants may seek to have any Court orders, filings, or other

23 entries in the Court's file that result from this class action Agreement set aside, withdrawn, sealed,

24 and stricken from the record; (3) the class action Agreement and all negotiations, proceedings, and

25 documents prepared, and statements made in connection with either of them, shall be without

26 prejudice to any party and shall not be deemed or construed to be an admission or confession by

27
28

any party of any fact, matter, or proposition of law; (4) all parties to the Litigation shall stand in the same procedural position as if the Agreement had not been negotiated, made, or filed with the Court; and (5) the $475,000 deposited in the escrow account in accordance with Paragraph V.B will be immediately disbursed to Defendants' Counsel by the Ducharme Settlement Administrator.

## VII. MISCELLANEOUS PROVISIONS

A.      The parties to this Agreement expressly acknowledge and agree that this Agreement is for purposes of the settlement of this Litigation only.  Neither the fact of, nor any provision contained in, this Agreement nor any of the implementing documents or actions taken under them, shall constitute, or be construed as, any admission of the validity of any claim, any status, or any fact alleged in the Litigation or any fault, wrongdoing, violation of law, or liability of any kind on the part of Defendants, or any admission by Defendants of any claim or allegation made in any action or proceeding against Defendants.  By entering into this Agreement, Defendants did not and do not admit, and specifically deny, that this Litigation or any action like it is appropriate for adversarial class action certification or adjudication.

B.      Nothing in this Agreement shall be construed by any party or Settlement Class Member as an admission by Defendants that this case is appropriate or amenable to class certification for trial purposes, nor shall this Agreement prevent Defendants from opposing class certification or seeking de-certification of the Settlement Class if final approval of this settlement is not obtained, or if appealed, is not affirmed on appeal, for any reason.  This Agreement shall not be used, offered, or admissible in evidence in any way or in any action or proceeding except:  (1) the hearings necessary to obtain and implement Court approval of this proposed settlement, or (2) any hearing to enforce the terms of this Agreement or any related order by the Court.

C.      Nothing in this Agreement shall prevent Defendants from complying with the law as it may exist now or in the future, or from making future changes to their contracts with clients or business practices if consistent with applicable statutes, statutory amendments, exemptions, regulations, or case law precedent.  Furthermore, nothing in this Agreement shall prevent

1  Defendants from complying with their obligations under the Fair Credit Reporting Act, the Fair

2  and Accurate Credit Transactions Act, or any similar federal or state statute, and the

3  accompanying regulations.

4          D.       Neither the fact of, nor any provision contained in, this Agreement shall constitute,

5  or be construed as, any admission by the Plaintiff that any of the claims or facts alleged in the

6  Litigation lacked merit.  Plaintiff maintains that she would have prevailed on class certification

7  and the merits had the Parties not agreed to this Agreement.

8          E.       All notices or other formal communications under this Agreement shall be in

9  writing and sent by mail to counsel for the party to whom the notice is directed at the following

10  addresses:

11  Plaintiff's Counsel:

12              Jay Edelson, Esq.
              Steven L. Woodrow, Esq.
13              Rafey S. Balabanian, Esq.
              Edelson McGuire, LLC
14              350 North La Salle Street
              Suite 1300
15              Chicago, IL 60654

16  Defendants' Counsel:

17              George M. Lindahl, Esq.
              Alan D. Mehaffey, Esq.
18              Lindahl Beck LLP
              660 South Figueroa Street
19              Suite 1500
              Los Angeles, CA  90017

20          F.       The parties and their attorneys agree to cooperate fully in seeking Court approval

21  for this Agreement and to use their best efforts to effect the consummation of the settlement

22  contemplated hereunder.

23          G.       Heath PLLC shall pay all costs of any notice relating to the settlement and all

24  necessary and reasonable costs of administering the processing of claims, disbursement of

25  consideration, and other administrative expenses, including, but not limited to, postage charges,

26  printing costs, telephone charges, and all other notice costs and other charges as may be approved

27  Amended Class Action Settlement          26          Case No. 10-cv-2763-CRB
   Agreement

28

by the parties subject to further approval by the Court.  In the event that this Agreement receives preliminary but not final approval, Defendants shall be solely responsible for any expenses they incurred, including without limitation, the costs associated with the notice, website, and settlement administration, notwithstanding the fact that the settlement herein is not finally approved.

H.      This written Agreement and its Exhibits shall constitute the entire agreement of the parties and supersedes any prior agreement and this Agreement also supersedes all prior negotiations and verbal representations.  Moreover, this Agreement shall not be subject to any change, modification, amendment, or addition without the express written consent of all parties to the Agreement.  Finally, Defendants shall not have any implied duties or obligations under this Agreement, but instead are agreeing to perform only those obligations that are expressly stated in the language of this Agreement.  No representations, warranties, or inducements have been made to any party concerning this Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

I.      The Parties agree that no single party shall be deemed to have drafted this Agreement or any portion thereof for purposes of *contra proferentem*.

J.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their representatives, heirs, successors, and assigns.

K.      This Agreement shall be construed in accordance with and governed by the laws of the State of California.

L.      This Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument, without production of the others.

M.      The parties agree that Named Plaintiff Mary Ducharme is, for purposes of this agreement only, an adequate representative of all Settlement Class Members.

N.       The parties agree that no press releases concerning this settlement will be issued by the Named Plaintiff, Heath PLLC, Fullman, Plaintiff's Counsel or Defendants' Counsel.  The parties further agree that should any press inquires be made to any party to this Agreement or their respective counsel, that party or counsel shall respond that the Litigation has been resolved to the parties' mutual satisfaction or words to this effect.

O.       The Parties agree that the Release should not be interpreted as impairing any Class Member from assisting in, being a witness in, or providing evidence in any action or investigation brought by either an Attorney General or Regulatory Agency and which arises out of or is related to the facts and subject matter of this Litigation.

Dated: _____, 2011          _____
                                  Mary Ducharme

Dated: _____, 2011          _____
                                  John C. Heath Attorney At Law, PLLC
                                  d/b/a Lexington Law Firm

Dated: _____, 2011          _____
                                  Adam C. Fullman d/b/a Lexington Law Firm California

Approved as to form:              Edelson McGuire, LLC

                                  By_____
                                  Jay Edelson
                                  Counsel for Plaintiff
                                  Mary Ducharme

                                  LINDAHL BECK LLP

                                  By_____

                                  George Lindahl
                                  Counsel for Defendants

Amended Class Action Settlement          28          Case No. 10-cv-2763-CRB
Agreement